UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
TERRE HAUTE DIVISION

| | | |
|---|---|---|
| MUFID A. ELFGEEH, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | No. 2:21-cv-00228-JPH-MKK |
| | ) | |
| FEDERAL BUREAU OF PRISONS, | ) | |
| | ) | |
| Respondent. | ) | |

**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND
DIRECTING ENTRY OF FINAL JUDGMENT**

Mufid A. Elfgeeh ("Mr. Elfgeeh"), a federal inmate, filed a petition for a writ
of habeas corpus pursuant to 28 U.S.C. § 2241, challenging a prison disciplinary
proceeding identified as Incident Report No. 2990243. For the reasons explained
in this Order, Mr. Elfgeeh's habeas petition is **denied,** and the **clerk is directed
to enter final judgment** in Respondent's favor.

## I.    Overview

Federal inmates seeking to challenge the loss of good time credits in prison
disciplinary proceedings on due process grounds may petition for a writ of
habeas corpus pursuant to 28 U.S.C. § 2241. *Jones v. Cross*, 637 F.3d 841, 845
(7th Cir. 2011). The due process requirement is satisfied with: 1) the issuance of
at least 24 hours advance written notice of the charge; 2) a limited opportunity
to call witnesses and present evidence to an impartial decision-maker; 3) a
written statement articulating the reasons for the disciplinary action and the
evidence justifying it; and 4) "some evidence in the record" to support the finding
of guilt. *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 454 (1985); *see*

*also Wolff v. McDonnell,* 418 U.S. 539, 563-67 (1974); *Jones*, 637 F.3d at 845

(same for federal inmates).

## II. Disciplinary Proceeding

On June 7, 2017, Officer C. Williams issued an Incident Report charging

Mr. Elfgeeh with a violation of Prohibited Act Code 104, possession of a weapon.

Dkt. 13-1 at 20. The Incident Report states:

> While searching I/M Elfgeeh, Mufid's Reg. No. 23582-055 Cell, Sole
> Occupant. (Z03-215), I discovered what appeared to be a homemade
> weapon; it appeared to be constructed of wood like material. The
> weapon had black in color rubber like material wrapped around it
> to form a handle. The rear of the weapon had an orange in color
> cloth like material formed into a loop for a hand strap. The weapon
> was about the thickness of a regular broom handle, it was measured
> at 6 ¼ " Long, and it had been sharpened to a point on one end. This
> weapon was found on the bottom bunk of the cell underneath I/M
> Elfegeeh's SHU clothing inside of an orange sock. Operations
> Lieutenant was notified once the weapon was found, and
> appropriate steps were taken to document the incident.

*Id.*

Mr. Elfgeeh received a copy of the Incident Report notifying him of the

charge on June 8, 2017. *Id.* He told the Unit Disciplinary Committee ("UDC")

that he did not know anything about the weapon and that it was not his knife.

*Id.* The incident report was forwarded to a disciplinary hearing officer ("DHO") for

further review. *Id.* On June 15, 2017, Mr. Elfgeeh was advised of his rights before

his hearing with the DHO, and he requested Counselor Childress as his staff

representative. Dkt. 13-1 at 16.

The DHO held Mr. Elfgeeh's disciplinary hearing on June 27, 2017. Dkt

13-1 at 16. When asked if he had any comments, Mr. Elfgeeh stated, "[c]ell

rotation is why I moved. I asked to be move[d] to a different cell because of the

2

toilet. I was there 2 ½ days when they found it. I was the sole occupant." *Id.* The DHO asked if Mr. Elfgeeh had any issue with the disciplinary process "up to this point," and Mr. Elfgeeh said "No." *Id.*

The evidence presented at the hearing included the incident report, the UDC investigation, Mr. Elfgeeh's statements, and photographs. *Id.* at 33. Based on this evidence, the DHO found Mr. Elfgeeh guilty. *Id.* The sanction imposed included the loss of forty-one good time credit days. *Id.* In the past, Mr. Elfgeeh made statements that he was mentally infirm. Dkt. 13-2 at 3-4. He was twice evaluated by a staff psychologist, on June 28 and July 5, 2017, after his disciplinary hearing. Dkt. 13-2 at 1-4. The evaluations indicated that Mr. Elfgeeh was both competent and responsible: "Inmate Elfgeeh does not suffer from a mental health condition that prevents him from being competent of the disciplinary process or responsible for his actions." *Id.* at 1.

Mr. Elfgeeh noted that he completed both administrative appeals, with both being denied on the merits.[1] Dkt. 1 at 2-3. He filed this petition, dkts. 1 and 12, and Respondent submitted a return, dkt. 13.

### III. Analysis

In his petition, Mr. Elfgeeh asserts six grounds for relief: 1) certain prison policies were violated, 2) prison officials failed to conduct a mental health

---

[1] Mr. Elfgeeh's own submission contains evidence that seemingly contradicts his petition. Dkt. 12-1 at 12-13. He states he filed his first level appeal but provides no documentation to support that assertion. *Id.* The documents he provided for the second level appeal demonstrate the second level of appeal did not receive the first level appellate decision, nor did they decide the matter on the merits. *Id.* Respondent did not raise a failure to exhaust administrative remedies argument. Dkt. 13.

evaluation before his disciplinary hearing, 3) prison officials failed to provide him with a translator during his disciplinary hearing, 4) he was denied the right to call witnesses, 5) he was provided an ineffective staff representative, and 6) his disciplinary proceeding lacked an impartial decisionmaker. Dkt. 1 at 1-6.

### 1. Prison Policies

Mr. Elfgeeh alleges that prison officials violated prison policies, including 1) permitting the UDC to hold its hearing where other inmates could hear the proceedings, 2) failing to provide him with a cell inspection sheet when he was relocated to a different cell, and 3) failing to deliver his incident report to him within 24 hours as outlined in the prison policy. Dkt. 12 at 1-6. Prison policies are "primarily designed to guide correctional officials in the administration of a prison" and not "to confer rights on inmates." *Sandin v. Conner*, 515 U.S. 472, 481–82 (1995). Therefore, claims based solely on prison policies are not cognizable and do not form a basis for habeas relief. *See Keller v. Donahue*, 271 F. App'x 531, 532 (7th Cir. 2008) (rejecting challenges to prison disciplinary proceeding because, "[i]nstead of addressing any potential constitutional defect, all of [the petitioner's] arguments relate to alleged departures from procedures outlined in the prison handbook that have no bearing on his right to due process"); *Rivera v. Davis*, 50 F. App'x 779, 780 (7th Cir. 2002) ("A prison's noncompliance with its internal regulations has no constitutional import—and nothing less warrants habeas corpus review."); *see also Estelle v. McGuire*, 502 U.S. 62, 68 at n.2 (1991) ("[S]tate-law violations provide no basis for federal habeas relief.").

4

### 2. Mental Health Evaluation

Mr. Elfgeeh alleges that prison officials knew he had mental health issues but failed to conduct a mental health evaluation to determine if he was competent to proceed with his disciplinary hearing. Dkt. 1. The due process rights of prisoners facing disciplinary proceedings are set forth in *Wolff* and *Hill*. A pre-hearing mental health evaluation is not included among those rights. These limited procedural guarantees may not be expanded by lower courts. *See White v. Ind. Parole Bd.*, 266 F.3d 759, 768 (7th Cir. 2001).

In this case, while no mental health evaluations were completed before the disciplinary hearing, two competency and responsibility evaluations were completed by a psychologist prior to the first appeal. *Cf.* Dkt. 12-1 at 4-6 with dkt. 12-1 at 12-13. *See also* dkt. 13-2. Neither evaluation concluded that Mr. Elfgeeh's conduct was a result of mental illness. On the contrary, one psychologist stated that Mr. Elfgeeh "does not suffer from a mental health condition that prevents him from being competent of the disciplinary process or responsibility for his actions." Dkt. 13-2 at 1. The reports also note that during previous evaluations Mr. Elfgeeh has admitted to fabricating mental health symptoms to be removed from general population and to get medication that he could later sell. Dkt. 12-1 at 4. Accordingly, Mr. Elfgeeh is not entitled to habeas relief on this ground.

### 3. Denial of a Language Translator

Mr. Elfgeeh alleges that he should have been provided a translator because English is not his primary language. Dkt. 1 at 6-7. "A criminal defendant is

denied due process when he is unable to understand the proceedings due to a language difficulty." *Mendoza v. United States*, 755 F.3d 821, 827 (7th Cir. 2014). The Seventh Circuit has never applied this standard to prison disciplinary hearings, but some district courts have. *See, e.g., Peralta v. Vasquez*, No. 01CIV.3171(BSJHBP), 2009 WL 750218, at *2 (S.D.N.Y. Mar. 20, 2009) ("[A]n inmate who is not fluent in English is entitled to an interpreter to permit him to understand the charge and the evidence against him.").

Regardless, it's a moot point here because the record demonstrates that Mr. Elfgeeh understood what was happening during his hearing. The DHO read the Incident Report aloud to Mr. Elfgeeh and asked him if the allegation was true. Dkt. 13-1 at 16. Mr. Elfgeeh replied "[c]ell rotation is why I moved. I asked to be move[d] to a different cell because of the toilet. I was there 2 ½ days when they found it. I was the sole occupant." *Id*. The DHO also asked Mr. Elfgeeh if he had any issues with the disciplinary process up to that point, and he responded no. *Id*. Moreover, Mr. Elfgeeh's submissions in this case demonstrate that has an effective command of the English language. *See* dkt. 1; dkt. 12-1 at 13; dkt. 12. Finally, Mr. Elfgeeh did not ask for an interpreter and he has not stated at what point during the proceeding he needed a translator. Instead, the record demonstrates he was informed of his charge, provided a staff representative, provided a statement during the hearing, and ultimately had a substantive hearing on the matter. Dkt. 13-1 at 16.

### 4. Right to Call Witnesses

Mr. Elfgeeh next alleges that the UDC did not permit him to call witnesses. Dkt. 12 at 2. The submitted evidence reveals Mr. Elfgeeh was notified of his ability to call witnesses, dkt. 13-1 at 22-23, was appointed a staff representative who could have assisted in contacting witnesses, *id.* at 25, and ultimately declined to request any witnesses, dkt. 12 at 6 and dkt. 13-1 at 16, 21. Since Mr. Elfgeeh did not request witnesses there can be no due process violation. *Sweeney v. Parke*, 113 F.3d 716, 719-20 (7th Cir. 1997) (where prisoner had opportunity to request witnesses when he was notified of the disciplinary hearing and chose not to, prisoner's limited right to call witnesses was fulfilled and his due process rights were not violated), *overruled on other grounds by White v. Ind. Parole Bd.*, 266 F 3d 759, 765-66 (7th Cir. 2001). Moreover, Mr. Elfgeeh does not indicate whom he wanted to call as a witness or explain how any witness could have helped him. Accordingly, Mr. Elfgeeh cannot obtain relief on this ground.

### 5. Ineffective Staff Representative

Mr. Elfgeeh also alleges he was appointed an ineffective staff representative. Dkt. 12 at 3-4. There is no constitutional due process right to a staff representative or lay advocate. "[D]ue process d[oes] not require that the prisoner be appointed a lay advocate, unless 'an illiterate inmate is involved ... or where the complexity of the issue makes it unlikely that the inmate will be able to collect and present the evidence necessary for an adequate comprehension of the case.'" *Miller v. Duckworth*, 963 F.2d 1002, 1004 (7th Cir. 1992) (quoting *Wolff*, 418 U.S. at 570); *see Wilson-El v. Finnan*, 263 F. App'x 503,

506 (7th Cir. 2008); *see also Arceneaux v. Pearson*, 449 F. App'x 396 (5th Cir. 2011) (no due process violation for failing to provide a staff representative absent an illiterate prisoner or a complex case). Here, Mr. Elfgeeh has not claimed that he is illiterate or that the charge was too complex for him to proceed with his disciplinary hearing, and even if he did the record would belie such a claim. Accordingly, this claim fails.

### 6. Impartial Decisionmaker

Finally, Mr. Elfgeeh challenges the impartiality of the DHO, alleging the hearing procedure did not consider his claims for a translator, mental health evaluation, or provide him the opportunity to present the case he wanted. Dkt. 12 at 2-5. A prisoner has a due process right to an impartial decisionmaker. *Hill*, 472 U.S. at 454; *Wolff*, 418 U.S. at 563-67. A "sufficiently impartial" decisionmaker is necessary to shield the prisoner from the arbitrary deprivation of his liberties. *Gaither v. Anderson*, 236 F.3d 817, 820 (7th Cir. 2000) (per curiam). Hearing officers "are entitled to a presumption of honesty and integrity" absent clear evidence to the contrary. *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003); *see Perotti v. Marberry*, 355 F. App'x 39, 43 (7th Cir. 2009) (citing *Withrow v. Larkin*, 421 U.S. 35, 47 (1975)). Indeed, "the constitutional standard for impermissible bias is high," and hearing officers "are not deemed biased simply because they presided over a prisoner's previous disciplinary proceeding" or because they are employed by the prison. *Piggie*, 342 F.3d at 666. Instead, hearing officers are impermissibly biased when, for example, they are "directly

or substantially involved in the factual events underlying the disciplinary charges, or in the investigation thereof." *Id.* at 667.

Here, the DHO who presided over Mr. Elfgeeh's hearing is entitled to a presumption of honesty and integrity, and to find otherwise requires clear evidence. There is no evidence that the DHO was involved in the investigation of Mr. Elfgeeh's conduct. Mr. Elfgeeh's concerns regarding how the DHO treated his allegations regarding a translator and mental health evaluations have been previously addressed. *See supra* Section III, Subsections 3 and 4. Additionally, Mr. Elfgeeh has pointed to no specific instance during his disciplinary hearing in which the DHO or the staff representative prevented him from pursuing his case in the manner he saw fit. In fact, the record shows he had an opportunity to make comments when notified of the charge, dkt 13-1 at 23, at the investigative stage, *id.* at 21, and during the disciplinary hearing, *id.* at 16, and yet there is no record of any of the above referenced concerns. Moreover, the DHO indicated that his decision was based on the Incident Report, the UDC hearing, the investigation, and Mr. Elfgeeh's statements. Dkt. 13 at 16-19. With no evidence to the contrary, Mr. Elfgeeh's assertions are unsupported.

## IV. Conclusion

"The touchstone of due process is protection of the individual against arbitrary action of the government." *Wolff*, 418 U.S. at 558. There was no arbitrary action in any aspect of the charge, disciplinary proceedings, or sanctions involved in the events identified in this action, and there was no constitutional infirmity in the proceeding which entitles Mr. Elfgeeh to the relief

he seeks. Accordingly, Mr. Elfgeeh's petition for a writ of habeas corpus must be

**DENIED**.

　　　　Judgment consistent with this Order shall now issue.

**SO ORDERED**.

Date: 5/3/2023

_James Patrick Hanlon_
James Patrick Hanlon
United States District Judge
Southern District of Indiana

Distribution:

MUFID A. ELFGEEH
23582055
TERRE HAUTE - USP
TERRE HAUTE U.S. PENITENTIARY
Inmate Mail/Parcels
P.O. BOX 33
TERRE HAUTE, IN 47808

Jeffrey D. Preston
UNITED STATES ATTORNEY'S OFFICE (Indianapolis)
jeffrey.preston@usdoj.gov